## STONER v. ROYAR, Appellant.

Division One, December 22, 1906.

1. **NEW TRIAL: Grounds: No Recital in Record.** The Legislature had power to require the trial court to "specify of record the ground or grounds" on which a new trial is granted, and that statute is mandatory, and a failure to comply with it is an injustice to appellant.

2. ———: ———: ———: **Reversal.** This court has never reversed an order granting a new trial, for failure of the record to show the ground on which the order was founded, because no case has yet reached the court in which justice seemed to demand that course. .

3. **ISLAND IN RIVER: Patented by Government.** The Congress did not by act prior to 1855 vest in the State the title of surveyed islands in the Missouri river, and patents to such islands issued by United States are proper evidence in ejectment.

4. ———: ———: **Evidence of Color of Title.** Where plaintiff's patent and deeds are competent as evidence that he holds the actual title, it is an injustice to him to admit them only as color of title in support of his assertion of title by adverse possession.

5. ————: Accretion: Ejectment: Instruction: Assumption of Fact. An instruction in ejectment for accreted 'lands which assumes that a part of the land in suit is covered by the deeds which form defendant's paper title, is erroneous. It assumes a fact to be settled by the jury.

6. EVIDENCE: Objection: Incompetent: Irrelevant. An objection that evidence offered is "incompetent," without any specification in what respect it is believed to be incompetent, is really no objection at all. But not so as to a general objection that the proffered evidence is "irrelevant;" that objection is sufficiently specific, for it means that the evidence does not bear on any issue in the case. And "immaterial" means almost the same thing.

Appeal from Saline Circuit Court. — *Hon. Samuel Davis*, Judge.

AFFIRMED.

*Robert M. Reynolds, S. J. Wheeler* and *Harry Parsons* for appellant.

(1) Under the pleadings and evidence, plaintiff could not recover, and this being true, no error upon the trial of the cause would be ground for a new trial. Bartley v. Railroad, 148 Mo. 125; Homuth v. Railroad, 129 Mo. 642; Vogg v. Railroad, 138 Mo. 180. (a) Plaintiff must have the legal title in ejectment. Claggett v. Robertson, 149 Mo. 153. (b) Respondent bases his chain of title upon a patent from the United States Government, to lands in section 11, issued in 1855. At that time the United States had parted with its title, and had granted the same by act of Congress, to the State of Missouri, and had no title which it could grant to respondent or his predecessors. Sec. 15, R. S. U. S., vol. 2, p. 747. (c) Respondent's color of title did not extend to the land in suit, even though it was an accretion to the island. He had no deed to the island, as an island, and hence his actual possession of a portion of

the same, with a deed to only a portion of the same, did not by virtue of his color of title extend to all of said island, but only to that portion embraced within his deed. Gordon v. Eans, 97 Mo. 589; Pharis v. Jones, 122 Mo. 125; Heinneman v. Bennett, 144 Mo. 113. (d) If respondent's deeds or chain of title had called for the entire island as an island, and if this land was an accretion to the island, then it might be that his color of title would extend to it; but here his deed is for certain lots upon an island, in section 11, and there is nothing to show that the lots ever extended to the water's edge, and were entitled to any accretions that may have been made to the island, or to any lands in section 12. (e) Certainly if these lots did not originally extend to the water's edge and form a portion of the shore of the island, there could be no accretion to them, and the mere fact that they were laid out upon an island, does not raise an inference even that they extended to the water's edge. The accretions go to the land against which they were made. Sweringen v. St. Louis, 151 Mo. 348; Benne v. Miller, 149 Mo. 248. (f) Mere claim to land without possession, will not ripen into title. Goltermann v. Schiermeyer, 125 Mo. 291. (g) And where possession is a mere naked one, without color of title, the disseizin does not extend to any land not actually occupied. Chapman v. Templeton, 53 Mo. 463. We therefore respectfully submit that respondent has not shown any title to this property, and appellant's refused instructions should have been given. (2) Upon the facts, without reference to the question of title, the verdict was for the right party, and where this is the case, it should not be set aside, even though error might have been committed upon the trial in the giving of instructions or otherwise. Homuth v. Railroad, 129 Mo. 642; Kelly v. Railroad, 88 Mo. 534; Ellerbe v. Bank, 109 Mo. 445.

*John A. Dunlap* and *D. D. Duggins* for respondent.

(1)   The court erred in excluding the deeds from plaintiff's grantors.   The patent issued by the United States, even to an island in the river, is prima-facie evidence that all prerequisites of the law necessary to its issuance have been complied with.   Cramer v. Keller, 98 Mo. 279; Polk v. Wendal, 9 Cranch 87; Bradshaw v. Edelen, 92 S. W. 697.   A stranger to the title is not in position to challenge a patent by the Government.   Johnson v. Fluetsch, 176 Mo. 452.   A straight legal title from the original patentee ought not to be impeached by a person holding a deed from a stranger or through a broken chain of title.   DeLassus v. Winn, 174 Mo. 636.   Section 15 of the Act of Congress approved June 4, 1812, providing for the government of the Territory of Missouri provides: "That the General Assembly shall never interfere with the primary disposal of the soil of the United States in Congress assembled, nor with any regulation Congress may find necessary to make for securing the title in the bona fide purchaser."   The island was surveyed by the Government, platted and found to be located in sections eleven and twelve, township fifty-two, range twenty-two.   The language used by the court in the case of Widdecombe v. Rosemiller, 118 Fed. 295, is very applicable to the case at bar.   (2)   The lands sued for were undoubtedly accretions, and formed either to the island or to the mainland.   If they were accretions to the island, then unquestionably, from the evidence, plaintiff should recover.   Widdecombe v. Chiles, 173 Mo. 195; Benne v. Miller, 149 Mo. 228.   The court fell into error by having its attention called to the law of 1895, wherein the Legislature granted the title to all islands formed in the Missouri river to the counties in which they were located.   This grant does not and could not impair the title to lands surveyed and platted by the Government and reserved in the acts of Congress authorizing the or-

ganization of the Territory of Missouri. (3) The first instruction given by the court at the instance of defendant was erroneous. It assumed that defendant owned the land sued for. The whole evidence and all instructions strongly indicate that the question was, who was the owner of the land in dispute? None of the plats are copied in the record. Simply because defendant had a deed to a tract of land is not sufficient to give him the title. It is error to single out a disputed fact and call the jury's attention to such fact as being taken for granted. (4) Defendant's second instruction is erroneous, for the reason said instruction assumes controverted facts. It tells the jury that although the slough between the main land and the accretions sued for make it impossible for accretions to form and attach themselves to the mainland, yet plaintiff could recover if the accretions originally attached themselves to the mainland. Said instruction is confusing and misleading. (5) The granting of a new trial is in the sound discretion of the trial court and the appellate court will not interfere unless that discretion is abused. Bank v. Bennett, 114 Mo. App. 691; Farrell v. Railroad, 105 Mo. App. 454. Whether or not there is any conflict in the evidence, the trial judge has supervisory control over verdicts, and may, in the exercise of sound discretion, set aside the verdict in the interest of justice. Morris v. Kansas City, 92 S. W. 908; Haven v. Railroad, 155 Mo. 516; McCarthy v. Transfer Co., 192 Mo. 401; Herndon v. Lewis, 173 Mo. 119; Schuette v. Railroad, 108 Mo. App. 186; Heinzeman v. Railroad, 182 Mo. 611. The court may award a new trial of any issue, upon good cause shown, but not more than one new trial of the same issue shall be granted to any one party. Sec. 725, R. S. 1899; Lovell v. Davis, 52 Mo. App. 347; McCabe v. Lewis, 76 Mo. 301. The omission of the various plats, surveys and exhibits is a failure to comply with the rule which requires an abstract of the record

to be printed, setting forth so much of the record as is necessary to a full and complete understanding of all questions presented for decision. Mitchell v. Mitchell, 90 S. W. 1147; Harrison v. Pounds, 190 Mo. 349. It will not do to cull over the record and present such evidence as appellant may think material. Reed v. Peck, 163 Mo. 336.

VALLIANT, J.—This is an action of ejectment to recover the possession of certain land in Saline county. The land was formed by accretions in the Missouri river. Plaintiff claims title, through patents from the United States to his remote grantors and a succession of deeds from them and their grantees to him, to certain land in an island in the river, and he claims that the land sued for is an accretion to his land covered by those patents and deeds. Defendant claims title to land on the river bank derived through a patent from the United States and deeds following, and he claims that the land sued for is an accretion to his land. The main question in the case is one of fact, but one of not very simple solution.

The patents from the United States which are the foundation of the plaintiff's paper title were issued in 1855. They call for the land patented by numbers of lots in sections, township and range, showing that they followed, or purported to follow, the descriptions in the Government survey. When these patents were offered in evidence the defendant objected on the ground that prior to 1855 the General Government had granted to the State of Missouri the title to all islands in the Missouri river; the court sustained the objection. The succeeding deeds by which the title came down from the patentees to the plaintiff were also on the same ground excluded. But later in the trial the court allowed the plaintiff to introduce his patents and deeds, not as giving title, but as giving color of title, under

which the plaintiff was allowed to introduce evidence
tending to prove that he had been in possession of the
land described in the patents and deeds for a period
long enough to give him title as by adverse possession.

The defendant·offered in evidence the patent from
the Government and the deeds following, bringing the
title down in regular course to himself to the land he
claimed on the river bank, the main shore. To these
documents the plaintiff offered the general objection
"incompetent, irrelevant and immaterial," which the
court overruled and they were admitted.

The bulk of the evidence related to the changes
made by the river in its course and the formation of
the land in suit, the ultimate question being, was this
land formed against the plaintiff's land on the island
or was it formed against'defendant's land on the main
shore?

The jury found the issues for the defendant,. where-
upon the plaintiff filed a motion for a new trial which
the court sustained, and the defendant appealed.

I.   The clerk in entering the order on the record
of the court omitted to state the ground or grounds on
which the new trial was awarded.  Section 801, Re-
vised Statutes 1899, expressly requires that: "Every
order allowing a new trial shall specify of record the
ground or grounds on which said new trial is granted."
In the same section the trial court is forbidden to grant
more than one new trial to the same party—except for
causes therein stated.  Whether the General Assembly
has authority under the Constitution to limit the judi-
cial power to such an extent as to forbid a trial court
granting a new trial when or whenever in its judgment
it would be a miscarriage of justice to give effect to
the verdict, is a question on which there might be dif-
ferences of opinion, but the power of the Legislature to
prescribe a code of procedure is unquestioned and
courts are bound to obey the law so prescribed.  There-

fore, when an order sustaining a motion for a new trial is recorded and in the record the ground or grounds on which the new trial is granted are not specified, if it was an accidental omission it was a neglect of duty, if it was an intentional omission it was a willful violation of law, and in either case it was an injustice to the appellant.

Whilst we have said that an order granting a new trial would not be reversed even if the ground stated by the court did not justify the order, provided the respondent, upon whom in that particular the burden rested, could point to some other ground that did justify it (Candee v. Railroad, 130 Mo. 142; Millar v. Car Co., Id. 517); yet we have never sanctioned the practice of disregarding the statute that requires the grounds to be stated. When the statute is disregarded an appellant who is forced to bring the record here without specification of the ground on which his verdict was set aside has not only the burden he would have if the ground had been so specified, but the burden of showing that in the whole record there was no ground justifying the order. We have never reversed an order granting a new trial for failure of the record to show the ground on which the order was founded, because no case has yet come before us in which justice seemed to demand that course.

II.   The court erred in sustaining the objection of defendant to the patents and deeds under which the plaintiff claimed title. The patents were issued in 1855; the ground of the objection was that prior to that date the United States had by act of Congress granted to the State of Missouri all the islands in the river. There is no such act of Congress. It has been said that title to islands formed in the river since Missouri became a State vested in the State (Cooley v. Golden, 117 Mo. 33; McBaine v. Johnson, 155 Mo. 191); but however that may be, this suit does not involve ti-

tle to an island so formed.  Here we have an island
that existed, so far as we know, before Missouri be-
came a State, that was surveyed as Government land
and patented by the United States.  In such case no
title has ever vested in the State.  [Widdicombe v.
Rosemiller, 118 Fed. 295; Bradshaw v. Edelen, 194 Mo.
640.]

After the plaintiff's patents and deeds were re-
jected as evidence of his title he was allowed to intro-
duce them as showing a color of title in support of his
claim of title by adverse possession, to which he was
reduced by the rejection of his paper title.

But allowing the documents to be read as color of
title did not cure the error.  Even if the plaintiff's evi-
dence made out a clear case of title by adverse posses-
sion still he was at the mercy of the jury to believe his
witnesses and understand the character of his posses-
sion, and was at the disadvantage of having his paper
title discredited and placing him in the unfavorable
attitude of one who had taken possession of land to
which at the time of his entry he had no title.  For the
error in rejecting those patents and deeds as evidence
of title the court was justified in granting a new trial.

III.   Defendant contends that upon the whole evi-
dence in the case the verdict was so clearly for the right
party that it should not be disturbed even if there
should be error found in the record.

There was substantial evidence tending to sustain
the plaintiff's claim that the land sued for was an
accretion to the land covered by his deeds and on the
other hand the defendant had substantial evidence
tending to show that it was an accretion to his land, it
was therefore a fair question of fact to be settled ac-
cording to the preponderance of the evidence.

IV.   The first instruction given for the defendant
starts out with saying:

"The court instructs the jury that originally the

defendant had the title to the south portion of the lands sued for in this case, and that his title extended to the water's edge of the Missouri river at its south bank; and that unless he has lost said lands by the action of the Missouri river or the sloughs mentioned in evidence, he now owns all of said land mentioned in the deeds produced in evidence, together with all other lands immediately north thereof to the water's edge of said river which, beginning at the edge of his north boundary line, have gradually and imperceptibly added themselves to his lands, as accretions by the action of the river; or by the recession of the river; and that before the plaintiff can recover in this case he must show to the satisfaction of the jury by a preponderance of the evidence (that is, by the greater weight of the credible testimony), first, that the slough mentioned in the evidence began at the extreme north boundary of defendant's land and gradually and imperceptibly cut away said lands until said slough is now to the south of defendant's said lands; and, second, that said slough is a water-course; and unless you so find from the evidence your verdict and finding must be for the defendant.''

After which in the same instruction are given definitions of the terms ''water-course'' and ''slough.''

That instruction assumes a fact which does not appear on the record before us, that is, that the south part of the land in suit is covered by the deeds which form the defendant's paper title.

The record shows that there were maps and plats in evidence which have not been brought up for our inspection and they may tend to show the fact which this instruction assumes, but even if they do, it is still a question of fact for the jury and not for the court.

The patent and deeds constituting the defendant's title to his original land on the main shore having been admitted in evidence without objection and there be-

ing nothing to the contrary, the court may assume that the defendant or those under whom he holds originally (that is, before the alleged changes wrought by the river) owned the land described in those documents, but that would still leave the question of fact whether the land sued for or any part of it was embraced in those descriptions, or has since been formed where that land was before the river cut it away, and that question the court had no right to answer.

We have said that the patent and deeds of defendant were introduced in evidence without objection, by which we do not mean that we have overlooked the objection in the general words "incompetent, irrelevant and immaterial."

An objection to evidence that it is irrelevant is sufficiently specific; it means that it does not bear on any issue in the case, and immaterial means nearly the same. It cannot be said of these documents that they were irrelevant, because they were the defendant's title to the land to which he claimed that the land in suit was an accretion, just as plaintiff's documentary evidence which did not call for this land, but did call for land to which the plaintiff claimed this land was an accretion.

But an objection on the ground that the evidence offered is incompetent without a specification in what respect it is believed to be so is really no objection at all.

The plaintiff's objection to the instruction that it assumes that defendant originally owned the south part of the land sued for is well taken.

V. The second instruction given for the defendant is a little obscure in its wording, and plaintiff criticises it as assuming facts in dispute and as confusing and misleading. As we have not the maps that were in evidence at the trial we cannot understand all that some of the witnesses said in describing and locating

the land.  But we gather from the record that the river
at one time ran with a current on both sides of this
island, that later the channel forsook the south side and
left only a slough there, that there is a slough there
now, but defendant's evidence tended to show that the
slough that is now to be seen there is not the original
slough, but is a new water-course cut suddenly by the
flood of the river at high water only three or four years
before this suit was begun, that it cut through defend-
ant's land and is not, therefore, as the old slough was,
the north boundary of his land, but divides it, his land
now lying on both sides of the slough.

We take this instruction 2 to mean that although
the land on the north side of the slough could not have
formed as an accretion to defendant's land on the south
side if the slough was where it is now when the land
was forming, yet, if that was not the fact, if the old
original slough has disappeared and if while it existed
it was the north boundary of defendant's land and if
in the course of its filling and disappearing the land in
suit was added to defendant's land by the gradual de-
posits or relictions of the slough, it then became the
defendant's property, and if thereafter the slough now
to be seen suddenly cut its way in a season of high
water through the accretion which had been thus added
to defendant's land, dividing it into two parts, then it
remained defendant's land, although divided by the
slough.

We think that is a correct view of the law.  On the
retrial the learned counsel can re-draft the instruction
and put it in terms clearer in meaning and less liable
to the criticism of his learned adversary.

There are no other points called to our attention
in the briefs.  For the reasons above given the judg-
ment is affirmed.

All concur.